Which is Pure Earth v. Gregory Paul Good morning. My name is Stella Tsai. I'm here with my partner David Moran and together we represent the Calvary Plain of Gregory Call in this matter. At its core, this case is... Could you just wait a minute? I'm just trying to get my papers together. And also, we'll just have three minutes for... Oh good, I'm ready about that. Okay, go ahead. Thank you. So as I said, at its core, this case is a straight forward case of fraud. Where we have one gentleman who sold these companies to a publicly known company for consideration securities, which turned out to be worthless. If we look at this as a breach of contract case... Yes. To what extent, if any, does the computation of damages, does the measure for determining damages, differ from a 10 to 5 case? Well, the only other factor I would say in that case, Your Honor, is that you would be looking at what the risk consideration would be as to the fraudulent conduct. So, in this case, it's essentially the same though. You have the consideration received and what you actually... The consideration that's post-received versus the consideration that's actually received. Would you then compute damages as of the day of breach? You would compute damages in the sense of the day of breach, but it's measured by the subsequent conduct. And you would have to then relate the subsequent conduct to the misrepresentation by omission in this case. The fraud on the market theory, the district court required the damages be computed on the fraud on the market theory. That's correct. And then excluded the report of Mr. Scherff, is it? Scherff, yes. Yeah, because they were not, his computations were not based on fraud on the market. That's correct, Your Honor. If we should determine that fraud on the market was inapplicable in this case, and that Mr. Scherff's report should have been admitted, how does Mr. Scherff's report demonstrate to us what the actual damages are? Your Honor, in this particular case with respect to Mr. Scherff's report, he was simply asked to compute a very simple measure of damages, which was what considerations received by Mr. Call versus what he actually received versus what he was supposed to receive. So the last part of the report addresses that issue, damages. And what it did was it just simply measured the considerations he received, and then this count would offset it against the consideration he received, which included securities. At the time of the report, or at the time the report was generated, the stock was 17 cents a share. It is now, I think it's .0015 cents a share. Just so I understand, was his point that there was a misrepresentation or omission of an investigation that was being conducted? What was his point that if I knew that, if he had, according to the stock purchase agreement, been truthful, I would have never entered into this. I never would have signed this agreement. And so my damages really began at that point when you were supposed to be truthful. At the time that you got that... So the damages are calculated as of that moment, correct? They're calculated as of the consideration that you have. But again, measured in the securities fraud situation, you can show that there is this causation. You have to show connection between... Maybe you should just show causation and whether it's a contract. I think this is an atypical transaction, which I think Judge Roth was suggesting. My comment about fraud in the market was my consideration that this is an atypical transaction. This is an atypical causation case. Very much so. In fact, what happened was there was an omission of very, very critical facts, and that was to... I'm sorry. Would you just... I'd like to hear the rest of her sentence. Go ahead. There was an omission in the course of negotiations regarding the existence of an investigation into the permits of the company, which are part of Mr. Call's companies. Permits in the waste hauling industry are the lifeblood of the organization. We cannot operate without them. And because of that, the fact that had Mr. Call known, and I think the court below would clearly agree with Donald's fact, had Mr. Call known that there was an investigation pending that could affect the business, and in fact that's what happened, the business collapsed. After the business integrity commission denied the permits, they were banned from operating the network. Let's go back to Judge Wells' question for a minute. We've tested the damages, and I have some interest in that as well. Okay. The damages are basically, I would not have been terminated in this transaction. If I did, I suffered a loss. Correct. And Mr. Sheriff's report sets forth the loss because of that business, correct? That's correct. And what was that loss? That loss, well, the reason why we, if we were so fortunate as to get, to go back to the trial court, he's confined to his record, right? Yes, and there are a range of options, three options, based on what the court would have found with respect to certain amendments that were made and the asset value and consideration. Arguably, there are several amendments after this initial stock purchase. That sounds very confusing. It is not confusing. This is not that confusing. It sounds like the last case. Excuse me, I'm sorry. The last case was also confusing. It's not that confusing. There are a lot of transactions, but it is really just a few good frauds. I'm sorry to interrupt. As of the time of breach, the permits had not actually been refused. That's what I'm saying. There was an investigation going on. The investigation was pending, and it was still unforeseeable that these permits would be somehow pulled. And, in fact, as the court decision reflects, there was some concern and desire to pull the permits before they actually got, and before it was adjudicated, because if it pulls your permit because of the fines of lack of honesty, sensitivity, character, and that you've tossed organized crime, you're banned from actually participating in it. But isn't it speculative to say, as of the time of breach, when this investigation was not revealed, the permits had not actually been refused. So how can you determine what the stock was worth when a future event was that your projection of the stock being worthless depended on a future event? Well, if you go to the cases that is in the circuit, third circuit, we have APMET systems, and we have what study favorably says, it was precisely that actual manifestation of the misrepresentation that helped substantiate the loss. It was to show and demonstrate that at the time they purchased the stolen securities, they were worthless. They were not worth the paper that they were putting on. And how does Mr. Scherff demonstrate that in his report? I've read the report. Give it to me in a nutshell. Well, sure. And this report was designed to just show a correlation, just to show some correlation between the misrepresentation, or actually in this case, omissions, and the actual subsequent decline in fortunes, which you'll see in these cases, which led to the fact that the stock was now worthless. And so that was what was designed. It was not designed to find actual value, because that's not what he was asked to do. Actual value, in a market case, is when you're trying to demonstrate that even here, I'm just going to throw in that fraud in the market, because I don't want to get confused. Fine, I don't want to confuse you. But you notice there, that part of the report, which talks about stock, is just to show a correlation and to exclude intervening factors, as you might in a negligence case, because that's what you're supposed to use as principles of causation. And so he excluded the fact that it was indiscriminate or the stock market as a whole, and that was what part of this analysis was. But when it came to Dan's report, he really just tried to identify the consideration that his author was providing versus what he actually got, which is nothing. Can we compute the damages, either for the stock complaint, 10D5, or for the breach of contract, on the basis of excluding other causes of the damage? Well, that's a very good question. I think that we have to look at what his actual losses were and whether they're attributable, and whether they are a substantial factor, not the substantial factor, in generating the loss to our client. Did the expert reports have thought figures for the actual loss as a result of the misrepresentation? Yes, because it's really a measurement, again, of the consideration of the stock. The drop in the value of the stock. That was the measurement at the time. Did I hear you say that the stocks were worthless at the time of the stock purchase? They were worthless in the sense that they would not be worth anything eventually, and you'll see in just a second. They would not have been worth anything had the misrepresentations been known to the public, is that what you're saying? Well, the public really is not... The publicly traded stock is private. It was publicly traded, but the transaction was private. It's private. It's a one-one. It's a misrepresentation. But if it was publicly traded, it had a value. That would be a different type of analysis, you know. Well, but did the report have such an analysis, a clear analysis, so that the district judge could write a figure for actual loss in this case? I believe it did, because it talked about the consideration that he received versus what he actually received. And at the time, the offset would have been the... I understand your argument that he was proceeding as a case of fraud on the market. He wasn't trying to establish the actual value of the consideration. So if you were to go back, there would be sufficient testimony so that you can establish actual loss based on the expert report? I believe... But it's not just based on the expert report. I also would say we had other factors and other information that showed the loss causation, which is another issue. Was that actually presented to the court, the loss causation? Or was it proffered to the court? It was, and there were several times when I was there myself where I tried to connect the dots between the misservice or omission in this case and the loss, and the loss of business because, obviously, the fortunes of the company are tied to valuation. And the court precluded us from presenting that testimony because he said it was irrelevant, where, clearly, from the case law in the circuit, there's not an effect associated with it. We're not taking it. So I tried. Thank you. Thank you. Thank you. My name is Mr. Gordon Andrew Charles, and I represent Cure, Think, Mark Hall Center in Brenton, Copenhagen. All of your questions about the plaintiff's theory of what the damages were do reflect some amount of confusion, but it's confusion in the presentation of this appeal by the appellant. Do you mean confusion by the court? No, not confusion by the court. Do you agree that this was an atypical transaction? This case was presented as an atypical transaction, and it was a private transaction that was part of the market in a family trade public corporation. And the shortcoming of the report is this. The court analyzed or reviewed the case, the report of undue-adapted standards for reliability and fit, and in doing so, it used the questions that are typically used in loss causation matters that are presented in typical loss causation cases. Whereas this could have been presented, we acknowledge, as an atypical one. But the reason the court did that was because Mr. Schultz's report went like this. The plaintiff gave consideration. The stock was assumed to be worth a certain amount in the contract, and I say it was worth 17 cents. Why? Because that's what it was worth when the fraud or the misstatement was exposed. So it was Mr. Schultz, the expert, who used the normal, typical loss causation analysis and nothing else. And it was Mr. Schultz who didn't provide the sort of standards and checks and things like that that the judge found worthy and adequate The 17 cents was the value of the stock when the disclosures were made concerning the investigation. It was the value of the stock at the time that the stock purchase agreement was signed. Mr. Schultz doesn't say. Well, does it not agree that the stock, as Mr. Cole gave his stock to Pure Earth in return for, gave his companies to Pure Earth in return for the Pure Earth stock, that the stock for that deal was being valued at $5 a share? The stock had assumed value for various security purposes of $5. It was trading at something else, $8 or something like that. So when the misrepresentations came out, the value of the stock dropped to 17 cents. The price of the stock dropped to 17 cents. Are those factors that can be considered in damages? Those are typical loss causation and can be used in atypical cases. But what the judge did was look at the report that the motion to exclude it, which presented a report by Mr. Creamer, where the judge agreed with Mr. Creamer that it was not a complete enough report to meet the standards of Delaware. And that determination is reviewable as it depends on whether it's in use of discretion or not. But was not the district court at that time looking upon the report as a report required in a typical mark fall on the market claim as opposed to an atypical case? No, the court was acknowledging that it could be an atypical case. But the report was presented as a typical report. The plaintiffs didn't present any other approach besides what's usually used in a typical loss causation, which is to say, I bought the stock. When there was a disclosure, I'm not sure it was disclosed, the price was X. So I say that there's a difference. But that's kind of a brilliant tease. That's a good word. Why couldn't that formula be teased out of the report that Jeff submitted to the court? Because the judge said there wasn't adequately excluded, there wasn't sufficient reliability because there weren't other tests at page 86 of the record. But it sounds like a very simple formula. The stock is valued at a certain price at the time of the transaction. If the misrepresentations come out, the stock drops to $0.17. And it showed through other waste hauling companies what generally those stocks were doing. It showed the general market, and then it showed the pure earth stock that went boom. Your Honor may find that the report is persuasive. The trial judge, the judge who decided the auction on the government, determined that it was his discretion not to do so. He said that the analysis should have first developed a model of the normal returns and the non-pure receivables and controls and win against what is generally accepted. Okay, but that's the historical case. And didn't he impose the requirements for a typical case on this atypical case? Only because that was the method that Mr. Scherff used. If Mr. Scherff had used another method or some less rigid approach, he could have. But this was what Mr. Scherff presented. And you still have to analyze any expert report from the government. Even as a government, our circuit has a very liberal policy with respect to admitting expert reports, and doesn't that cut everything? It's also a liberal policy that's applicable for the most part in jury trials. And then that relates to the argument that runs through these briefs about what the standard of review is. We say it is a piece of discretion standard. They say there's a misapplication or a misunderstanding of the law. But in either case, what the judge did was say, it's relevant but not persuasive. You know, the judge was the final effect. So if the judge has said, you know what, I'll let it in. I now find it relevant but not persuasive. Why don't we send it back? This is a classic one-of-three case where the judge said, at some point, it's not persuasive enough to convince me. If you said that before a jury trial, we would need a different review standard. But it really is as harmless as can be in this situation. Well, Ms. Tsai was saying that there was other evidence she was attempting to present during the trial, and the judge, on the basis that he had excluded the report, and from my reading of the record, it would seem on the basis that he was considering this to be the typical transaction requirement, test requirement, that he excluded that, that the testimony that Ms. Tsai was attempting to introduce doesn't now require us, since he said he excluded it as opposed to finding it non-persuasive, that we should permit this call to present that testimony to the court. For better or for worse, and I think for better, I didn't have the privilege of trying this case, and I don't see references in the brief to what was kept out other than Mr. Scherff's testimony. So I do know that Mr. Hall was permitted to say, and did say, and persuaded the court, and it resulted in the assumption that we're all here working on what is defined, and that he was elected into the transaction, if you know. We get that. We get that he was very important. It may not be the only thing needed, but it was very important to the company to have these licenses, and that investigations can place a claim. We know that. But we also know that the company was buying and making money, and that the judge thought that it was important to consider that and consider the other factors that the court didn't consider, no matter whether it was a loss causation or not. The transaction causation is obviously not enough to establish proximate cause of loss. I have read various parts of the transcript, and there are at least one case, and I think there's more, where Cole is attempting to present more to the court, and the court says, no, we've already ruled on that. I can't speak to it because the brief didn't get to it. Well, yeah, the brief did. I mean, that's how I figured it out. The brief, or the appellate's argument, I would say, is based on an effort to do what McCabe prohibits, what Durer prohibits, what McCabe and Durer both rejected as jurisprudence from other circuits, which is to say that it attempts to present the idea that if you've entered into a transaction and the transaction will have happened but for some misrepresentation or omission that is significant, that there have to be damages, and there have to be, I don't know, there have to be damages. The public policy says that the person who commits the fraud or the omission is not an insurer of a good investment and that the person who commits the fraud or the omission is responsible for the damages caused and not others. So there has to be an analysis of what was caused. Well, Judge, I hope this fell short. The omission here was that there was, the BIC was conducting an investigation. Correct. And that the mockery connection, the bad character of the people in the company, if that was the determination, that the premise would be withdrawn or not granted. And that premise, a trash hauling company can't do anything. So that it would be worthless, and Mr. Kohl has said that I relied upon this omission because if I had known about the investigation, I never would have bought, I never would have invested my companies and taken the pure earth stock back. And the result of the investigation was that the premise would have withdrawn, the company had no business, the company was worthless in a non-typical transaction that you paid $5 worth for the stock and you got something back that was worthless and you can see it was worthless because when the company couldn't do business anymore, the stock went down to 17 cents. Isn't that enough to show the loss that was caused to Mr. Kohl by taking this by the omission and participating in this transaction? Well, 17 cents isn't worthless and the revenue stream that was generated during the year or two or so was not worthless either. So if you can tackle enough time after the fraud, you don't have to be held responsible for it? No, I'm not saying that, but what I'm saying is that it may still be that there is transaction causation, but there is not loss causation where you can say it was worthless. There is the opportunity to show loss, there is an opportunity to show approximate cost of a particular loss. This report showed a loss of between $2.8 and $8.9 million. That's more than a 300% difference. Somehow those numbers arrived at the end of the report, but at the beginning of the report, the report professes to be a typical report that uses a method which, if it was not satisfied, it was used adequately and with proper controls. So it seems to me that there is a difference. Is it relevant to our analysis that pure stock was lightly traded? It means that the analysis of Mr. Sharpe falls short because he is, in fact, relying on the trading results of the disclosure. And the court has said there is no showing that the disclosure even reached the public in a sub-family trade. And there are days and days and days when it was never traded. It means it can be a typical loss causation case, but it also means that this particular analysis used the wrong benchmarks in the eyes of the trial judge who was to weigh its weight, its convincing power under Rule 702, on the notion that if it didn't, it wouldn't at the trial. I wonder what the correct benchmark would be then. You sort of mentioned it before, didn't you? But you're saying that it wasn't in the expert report. Have I got that right? I'm sorry? Have I got that right? That you basically mentioned the correct benchmark, but what you're saying is that it wasn't in the expert report, so there was no piece of discretion in rejecting the independent statement. I have a little time left, but I'm happy to move it. Thank you. Well, why don't you stay for a minute? The expert compared to the Dow Jones Industrial Average and other waste management companies, right? Why wasn't that reliable? As I said, it may be reliable to some, but not to this trial judge. And the answer is in the rather long explanation from Mr. Creamer that was put in by the defenses to why there were more things to consider, but also because he fundamentally used the stock price, and the stock price he saw was not reliable. So to compare the stock price to the Dow Jones Average was a meaningful thing. Well, he's comparing it in order to show that all waste management companies didn't prove that it was only pure earth. Right. I understand. But there are obviously other things going on in the company. This company had its own revenue stream, but wasn't the same as all waste management companies. So it may have been a useful benchmark, but not in order to convince the judge. Thank you. Thank you. Oh, here's a bubble. Thank you. I just wanted to start with a quote from Barclay regarding typical cases, because I think it's pertinent here. It's that even here it's not the price which an investor paid for the security, but the reason to purchase the security. Yeah, I mean, aside, Mr. Shoresley's a pretty good quote. I think our benchmark for determining damage is subliminal damage issues. It is. But those benchmarks were not in the expert's report, and that's why the district court excluded the report. Did you have a comment on that? Yes, I'd like to. In page 29 of our brief, we've identified three of the major criticisms that were made of the report by the district court. Could you just hit the nail on the head? I mean, Judge Roth has been mentioning stock values and drops in values, and it seems like it's a pretty good guide to me. Well, what he was asking for, what the district court had asked for, is something called an event study. An event study is something that is used to measure a non-disclosure of omission. An event study actually is designed to measure the impact of the infirmary It's still on the market measure. It's still on the market measure. That's what this is. That's what all these particular issues, the only issues that were addressed. This is an atypical transaction. This is an atypical transaction. So what are the benchmark damages in an atypical transaction like this one? In the expert review? No. No. Why not? I don't understand why they're doing that. Mr. Shoresley has mentioned the benchmark. Say I am the district court judge. This case comes back to me. I want to know exactly what are the measure of damages and how are you going to present the measure of damages? I would present the measure of damages by talking about the consideration that was provided in the contract. What was the consideration? The consideration was the stock, the stock, and the value of $5. The PEI stock. PEI stock. Which is value of $5. $5 a share. It's value between the parties of $5 a share. We're getting there. Do you know what are the damages? The damages are the amount of $5 times the $1.6 million or whatever. And as Mr. Charles said, there was an information that was provided by the district court, by the expert. But what you do is offset it against what the value of the consideration received. All of that is in Sheriff's report. All of that is in Sheriff's report. So I'm going to point all of that out to the district court. It's all in the last section. Okay. And I think that the suggestion of the fraud market, fraud market for fiscal surprise. Well, I think the comments about market dynamics, dissemination, information on the market, et cetera, it sounds like fraud on the market type analysis. What he's trying to do is just to exclude the – and also to reference the proof that we're providing about the connection between the firm's – the firm's emissions and the subsequent decline. That's what he's trying to do. Okay. Thank you. Thank you. Thank you. Thank you, Ben.